**SO ORDERED.**

**SIGNED this 22 day of May, 2018.**

_____
**David M. Warren**
**United States Bankruptcy Judge**

_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
NEW BERN DIVISION

IN RE:                                                                    CASE NO. 16-01576-5-DMW

TIM S. HELMEID
CRYSTAL DAWN HELMEID
                                                                                      CHAPTER 13
            DEBTORS

ORDER ALLOWING SURRENDER OF COLLATERAL AND INCURRENCE OF
DEBT AND ALLOWING INTERIM MODIFICATION OF PLAN

This matter comes before the court upon the Motion to Allow Surrender of Motor Vehicle, Modification of Chapter 13 Plan and Incurrence of Debt filed by Tim S. Helmeid and Crystal Dawn Helmeid ("Debtors") on February 7, 2018 and the responses thereto filed respectively by Consumer Portfolio Services, Inc. ("CPS") on February 27, 2018 and Chapter 13 trustee Joseph A. Bledsoe III, Esq. ("Trustee") on February 28, 2018.  The court conducted a hearing on May 17, 2018 in New Bern, North Carolina.  Roger A. Moore, Esq. appeared for the Debtors, Kristen M. Redman, Esq. appeared for CPS, and the Trustee appeared on his own behalf.  Based upon the evidence presented and arguments of counsel, the court makes the following findings of fact and conclusions of law:

1. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) which the court has the authority to hear and determine pursuant to 28 U.S.C. § 157(b)(1). The court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 157(a) and 1334 and the General Order of Reference entered on August 3, 1984 by the United States District Court for the Eastern District of North Carolina.

2. The Debtors filed a voluntary petition for relief under Chapter 13 of the United States Bankruptcy Code[1] on March 24, 2016, and the court appointed the Trustee to administer the case pursuant to § 1302.

3. On October 19, 2015, the Debtors and Rippy Cadillac, LLC executed a Retail Installment Contract ("Note") for the Debtors' purchase of a 2012 Kia Sorento ("Kia") for the principal amount of $15,726.47. Rippy Cadillac, LLC assigned its interest under the Note to CPS. The Note is properly secured by a purchase money security interest in the Kia, with perfection of CPS's lien noted upon the Kia's certificate of title.

4. On April 11, 2016, CPS filed a Proof of Claim evidencing that the balance due under the Note on the date of the Debtors' petition was $15,405.37.

5. The Debtors' Chapter 13 Plan ("Plan"), confirmed by the court on July 1, 2016, requires the Debtors to make monthly payments to the Trustee in the amount of $460.00 for a period of fifty-seven (57) months. The Plan allows CPS's claim as fully secured in the amount of $15,405.37, to be paid through the Plan by the Trustee with interest accruing at 5.5%.

6. In the Motion, the Debtors contend that the Kia is no longer reliable transportation and requires repairs, including engine replacement, at a minimum cost of $8,850.00. The Debtors wish to surrender the Kia to CPS and purchase a replacement vehicle by incurring debt, with the

---

[1] Except for within formal citations, references to the Bankruptcy Code, 11 U.S.C. § 101 *et seq.*, shall be by section number only.

total amount financed not to exceed $12,000.00 and monthly payments not to exceed $300.00 being made outside the Plan. With the surrender of the Kia, the Debtors seek to modify the Plan to reduce the monthly payments to the Trustee to $75.00 and treat any deficiency balance owing to CPS as a general unsecured claim. CPS does not object to the surrender of the Kia but argues that any deficiency must remain a secured claim and be paid fully through the Plan.

7. At the hearing, the female Debtor testified that the Kia is the Debtors' only vehicle, and that it is critical that they have reliable transportation to their respective jobs. Although the Debtors purchased the Kia as a used vehicle with approximately 53,000 miles and have added approximately 45,000 miles since they acquired it, the female Debtor stated that they have performed routine maintenance and did not anticipate the vehicle to deteriorate to the extent that would require engine replacement. The female Debtor also testified that the male Debtor's income has decreased due to the seasonal nature of his work.

8. The court understands the Debtors' need for reliable transportation, and the proposed financing for the purchase of a new vehicle is reasonable; therefore, the court will allow the Debtors to incur this debt and surrender the Kia to CPS. That ruling leaves for determination the issue of whether the Debtors can modify the Plan to treat as an unsecured claim any deficiency owed to CPS after surrender and liquidation of the Kia.

9. "The provisions of a confirmed [Chapter 13] plan bind the debtor and each creditor . . . ." 11 U.S.C. § 1327(a). *See Murphy v. O'Donnell (In re Murphy)*, 474 F.3d 143, 148 (4th Cir. 2007) (quoting *Matter of Penrod*, 169 B.R. 910, 916 (Bankr. S.D. Ind. 1994)) (holding that "[a] confirmed Chapter 13 plan is 'a new and binding contract, sanctioned by the court, between the debtors and their pre-confirmation creditor[s]'"). However, "[l]ike other contracts, a confirmed

3

Chapter 13 plan is subject to modification." *Id.* (citing *Arnold v. Weast (In re Arnold)*, 869 F.2d 240, 241 (4th Cir. 1989)).

    10.    Modification of a confirmed Chapter 13 plan is governed by § 1329 which provides in relevant part as follows:

> (a) At any time after confirmation of the plan but before the completion of payments under such plan, the plan may be modified, upon request of the debtor, the trustee, or the holder of an allowed unsecured claim, to—
>   (1) increase or reduce the amount of payments on claims of a particular class provided for by the plan;
>   (2) extend or reduce the time for such payments;
>   (3) alter the amount of the distribution to a creditor whose claim is provided for by the plan to the extent necessary to take account of any payment of such claim other than under the plan …
>
> \* \* \*
>
> (b) (1) Sections 1322(a), 1322(b), and 1323(c) of this title and the requirements of section 1325(a) of this title apply to any modification under subsection (a) of this section.
>   (2) The plan as modified becomes the plan unless, after notice and a hearing, such modification is disapproved.

11 U.S.C. § 1329(a). A moving party seeking modification under § 1329 bears the burden of proof. *In re Matusak*, Case No. 14-02032-5-SWH, 2017 WL 4174361, at \*3 (Bankr. E.D.N.C. Sept. 19, 2017).

    11.    The United States Court of Appeals for the Fourth Circuit holds that "the doctrine of *res judicata* prevents modification of a confirmed plan pursuant to §§ 1329(a)(1) or (a)(2) unless the party seeking modification demonstrates that the debtor experienced a 'substantial' and 'unanticipated' post-confirmation change in his financial condition." *Murphy*, 474 F.3d at 149 (citing *Arnold*, 869 F.2d at 243). This doctrine "ensures that confirmation orders will be accorded the necessary degree of finality, preventing parties from seeking to modify plans when minor and anticipated changes in the debtor's financial condition take place." *Id.*

12. Recently, the court followed the United States Court of Appeals for the Sixth Circuit in holding "that 11 U.S.C. § 1329 only permits post-confirmation modification of the amount and timing of payments, not the total amount of a particular claim; therefore, a debtor cannot modify a plan by surrendering collateral and having any deficiency classified as an unsecured claim." *In re Royal*, No. 14-07134-5-DMW, 2016 WL 2568861, at *2 (Bankr. E.D.N.C. May 2, 2016) (citing *Chrysler Financial Corp. v. Nolan (In re Nolan)*, 232 F.3d 528, 532-33 (6th Cir. 2000)). As explained by the United States Bankruptcy Court for the Middle District of North Carolina:

> Section 1327 provides the general rule that the plan is binding upon confirmation, while § 1329(a) provides limited exceptions to this rule. Section 1329(a) specifically enumerates the three purposes for which a plan may be modified, but does not include among those [modifying a plan in order to reclassify a secured claim]. Given the binding nature of confirmation, a secured creditor cannot move to modify the plan if the value of the collateral appreciates. This Court is not persuaded that Congress intended to allow a debtor to use § 1329 to essentially revalue collateral that has depreciated while the debtor had the benefit of possession of that collateral, leaving the creditor with an unsecured claim. Furthermore, a debtor in this situation has other options, if necessary. A debtor can convert to Chapter 7, or dismiss the case and refile after the collateral has been repossessed by the creditor. The Court is unwilling to stretch the plain meaning of § 1329(a) under these circumstances.

*In re Miller*, No. 99-81339, 2002 WL 31115656, at *4 (Bankr. M.D.N.C. Apr. 19, 2002).

13. The Trustee suggests that even though CPS has a fully secured claim under the Plan, it is the only creditor within its class and the amount of payment to the class can be reduced by modification under § 1329(a)(1). The court disagrees and finds further reason for denying modification of CPS's claim in the fact that the Kia was purchased within 910 days of the Debtors' Chapter 13 petition.

14. Section 1325, which governs confirmation of Chapter 13 plans, contains a provision that prevents debtors from bifurcating or cramming down claims secured by a purchase money security interest in a motor vehicle purchased within 910 days of the petition date. 11 U.S.C. § 1325(a). *See also In re Brooks*, 344 B.R. 417, 419 (Bankr. E.D.N.C. 2006) (holding that a Chapter 13 plan must provide for full payment of a 910 secured claim plus interest). The Kia was purchased within the 910 days preceding the Debtors' petition; therefore, confirmation of the Plan was dependent on CPS being allowed a fully secured claim. Likewise, § 1329(b)(1) dictates that any proposed plan modification under § 1329(a) must comply with the requirements of § 1325(a), including the "910 Rule," thus a modification that reduces the amount of CPS's secured claim is impermissible.

15. Even if the Debtors could pursue modification of payment to CPS under § 1329(a)(1), the modification would be subject to the Debtors showing that they experienced a substantial and unanticipated post-confirmation change in their financial circumstances. The female Debtor's testimony did not meet this burden, and the court cannot find that either the expenses associated with Kia or the Debtors' reduced income is substantial or unanticipated.

16. Although not cited by either the Debtors or the Trustee, the court finds that any modification to the Plan would be more appropriately made under § 1329(a)(3), which allows an alteration in the amount of distribution to a creditor whose claim is provided for by a plan to the extent necessary to take account of any payment other than through the plan. This court recently held that "the substantial and unanticipated change requirement established by *Arnold* does not expressly extend to modifications under this subsection and is limited to modifications under §§ 1329(a)(1) and (2)." *In re Hayes*, No. 15-04581-5-DMW, 2018 WL 718386, *4 (Bankr. E.D.N.C. Feb. 5, 2018).

17. After surrender and liquidation of the Kia, CPS will receive payment on its secured claim outside of the Plan, justifying a reduction of distribution to CPS through the Plan. With monthly payments for the anticipated financing of a new vehicle to be made outside the Plan, it is appropriate to reduce correspondingly the Debtors' monthly Plan payments to the Trustee. The Debtors' proposed reduction of these payments from $460.00 to $75.00 assumed that an unsecured deficiency would be owed to CPS after liquidation of the Kia; however, any such deficiency will remain a secured claim to be paid through the Plan. Until the amount of CPS's deficiency claim, if any, is established, the court will allow an interim modification of the Debtors' Plan payments to $75.00. A final modification of the Plan payments can be made upon determination of the remaining amount of CPS's secured claim to be paid through the Plan; now therefore,

It is ORDERED, ADJUDGED, and DECREED as follows:

1. The Debtors be, and hereby are, allowed to surrender the Kia to CPS;

2. Within 90 days of the date of this Order, CPS shall file an amended proof of claim to reflect any amount remaining due under Note after liquidation of the Kia;

3. Pending CPS's filing of an amended proof of claim, the Debtors are allowed an interim modification of the Plan to provide for monthly payments to the Trustee in the amount of $75.00, commencing with the June 2018 payment;

4. Upon CPS's timely filing of its amended proof of claim, either the Debtors, the Trustee, or CPS may seek final modification of the Plan to provide for monthly payments to the Trustee of an amount sufficient to satisfy fully CPS's claim; and

5. The Debtors be, and hereby are, allowed to incur debt for the purchase of a new vehicle for the maximum amount of $12,000.00, with monthly payments not to exceed $300.00.

**END OF DOCUMENT**